**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark William Clary, Jr., | No. CV-22-00205-PHX-DJH |
| Petitioner, | **ORDER** |
| v. | |
| David Shinn, et al., | |
| Respondents. | |

Before the Court is the April 28, 2023, Report and Recommendation ("R&R") of Magistrate Judge Eileen S. Willett (Doc. 23) recommending the Court deny Petitioner Mark William Clary, Jr.'s Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 4). Petitioner challenges his convictions in Arizona state court for manslaughter, aggravated assault, and leaving the scene of a fatal injury accident. Petitioner, through counsel, filed timely Objections to the R&R (Doc. 27) to which the Respondents responded (Doc. 28). For the following reasons, the Court overrules Petitioner's objections and adopts the R&R as the Order of the Court.

## I.  Standard of Review

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). It is "clear that the district judge must review the magistrate judge's findings and recommendations *de novo* if objection is made, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (emphasis in original); *Schmidt v. Johnstone*, 263

F.Supp.2d 1219, 1226 (D. Ariz. 2003) ("Following *Reyna-Tapia*, this Court concludes that *de novo* review of factual and legal issues is required if objections are made, 'but not otherwise.'"); *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1032 (9th Cir. 2009) (the district court "must review *de novo* the portions of the [Magistrate Judge's] recommendations to which the parties object").  District courts are not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985) (emphasis added).

## II.    Factual and Procedural Background

The R&R recounted the factual and procedural background of Petitioner's convictions in state court.  (Doc. 23 at 1–3).  Neither party objected to this recounting and the Court hereby accepts and adopts it.

## III.    Claims in the Amended Petition

The R&R identifies four grounds for relief, with related subparts, in the Amended Petition.

Ground 1 alleges that Petitioner's Fifth, Sixth, and Fourteenth Amendment rights were violated when the state court denied Petitioner's motion to dismiss the indictment. The R&R breaks Ground 1 into three subclaims: Ground 1(a) alleges an intrusion into Petitioner's attorney-client privilege on the day of Petitioner's arrest; Ground 1(b) alleges that Detective Siewert provided perjurious testimony to the grand jury; and Ground 1(c) challenges the trial court's suppression remedy as inadequate.

Ground 2 argues that Petitioner's Fifth, Sixth, and Fourteenth Amendment rights were violated when Detective Siewert was allowed to testify as an expert accident reconstructionist and provide testimony concerning data retrieved from the Corvette Petitioner was driving.

Ground 3(a) alleges that the trial court violated Petitioner's Fifth, Sixth, and Fourteenth Amendment rights when it sustained the State's hearsay objection during trial counsel's cross-examination of one of the State's witnesses, Deborah Higuera ("Higuera").

The remainder of Petitioner claims—Grounds 3(b)–(d) and 4(a)–(c)—allege

ineffective assistance of counsel.    Subclaim 3(b) argues that trial counsel's cross-examination of State witness Anna Martinez ("Martinez") was constitutionally ineffective; subclaim 3(c) argues that trial counsel's cross-examination of Higuera was ineffective; and subclaim 3(d) argues that trial counsel's failure to elicit testimony he "promised" in his opening statement was ineffective assistance of counsel.

Subclaim 4(a) alleges trial counsel was ineffective when he agreed that evidentiary rules did not preclude eyewitnesses from testifying that the Corvette was traveling "fast." Subclaim 4(b) alleges ineffective assistance of counsel based on the trial counsel's failure to object to opinions regarding fault and inflammatory statements.    Finally, subclaim 4(c) alleges that his counsel was ineffective due to the cumulative effect of purported deficiencies in trial counsel's performance.

## IV.    Habeas Standards and Petitioner's Objections

The R&R summarizes the legal standard governing this Court's review of claims on federal habeas review. (Doc. 23 at 3–4). Neither party objects to this summary of the governing law and the Court accepts and adopts it.

Generally, under 28 U.S.C. §§ 2254(d)(1) and (2) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), if a claim was "adjudicated on the merits in [s]tate court proceedings," a federal court may only grant habeas relief if the state court's adjudication of the claim resulted in a decision "that was contrary to, or involved an unreasonable application of, clearly established Federal law" or was that was based on an unreasonable determination of the facts.  *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). In applying "Federal law" the state courts only need to act in accordance with Supreme Court case law.  *See Carey v. Musladin*, 549 U.S. 70, 74 (2006).  The Court applies the provisions of 28 U.S.C. § 2254(d) to the last reasoned state court decision addressing the claim.  *Barker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005).

### A.    Ground 1: Claims Related to Petitioner's Motion to Dismiss the Indictment

While in custody but prior to being charged, Petitioner invoked his right to counsel and called his father, who is an attorney.  Petitioner's father put him on speaker and used a

second phone, also on a speaker, to call a criminal defense attorney. Detective Siewert interrupted Petitioner's call to say that Petitioner had to do some testing. Petitioner moved to dismiss the indictment, arguing the State would not have done alcohol testing unless Detective Siewert heard him on the phone with his attorney discussing defense strategies. Acknowledging that "the Sixth Amendment may not be applicable to preindictment misconduct by the State," Petitioner nonetheless argued that when the detective "surreptitiously listened to [Petitioner's] confidential attorney-client telephone conversation he learned defense strategy and facts of the offenses charged," conduct he characterized as "outrageous" and in violation of the Fifth Amendment right to due process. (Doc. 4-1 at 18).

After an evidentiary hearing on the motion, the court found that the detective's intrusion was intentional and suppressed all evidence of Petitioner's alcohol use, including the detective's testimony that Petitioner had used alcohol. The court denied Petitioner's request to dismiss the indictment, however. (Doc. 4-1 at 208–09 (explaining that after balancing Petitioner's "rights against society's interest in the administration of criminal justice," Petitioner would receive a fair trial with the suppression of this evidence)). The court subsequently denied the State's motion to reconsider, but clarified that evidence preceding the call, including observations from other officers, were admissible. On appeal, the state court rejected Petitioner's argument that trial court erred when it did not suppress all the fruits of the illegally obtained blood draw and grant Petitioner's motion to dismiss the indictment. (Doc. 4-13 at 163 (holding "the trial court did not abuse its discretion in ordering preclusion of alcohol-related evidence as a less drastic remedy than dismissing the indictment")).

Under these facts, Petitioner alleges that his Fifth, Sixth, and Fourteenth Amendment rights to counsel have been violated.

### 1.    Ground 1(a) – Attorney-Client Privilege Violation

In Ground 1(a) Petitioner argues that his indictment should have been dismissed because his Fifth, Sixth, and Fourteenth Amendment rights to counsel were violated when

- 4 -

1    Detective Siewert violated his attorney-client privileged conversation during his arrest.

2    ## a.    Sixth Amendment Violation

3    Judge Willett found no Sixth Amendment habeas relief was available under Ground
4    1(a) because the purported intrusion of the attorney-client privilege occurred on April 15,
5    2012, prior to the initiation of formal judicial proceedings against Petitioner on April 17,
6    2012, and thus the Sixth Amendment right to counsel had not attached and could not have
7    been violated.  (Doc. 23 at 13).  Because the Sixth Amendment right to counsel had not
8    attached, the claim was not cognizable and Judge Willett found that the Arizona Court of
9    Appeals' denial of Petitioner's motion to dismiss based upon a Sixth Amendment violation
10   was not contrary to or an unreasonable application of clearly established federal law.

11   Petitioner makes two objections with regard to Judge Willett's findings.  First, he
12   says the judge erred by finding that Claim 1(a) was not cognizable because the State did
13   not argue the inapplicability of the Sixth Amendment violation in its Answer and thus
14   waived it.  This objection is overruled.  Habeas relief is only allowed under Section 2254(a)
15   if a person is in state custody "in violation of the Constitution or laws or treaties of the
16   United States."  This is a standard of review that a court is obligated to apply and is non-
17   waivable.  *See Hooper v. Shinn*, 985 F.3d 594, 6125 n. 11 (9th Cir. 2021), cert. denied, 212
18   L. Ed. 2d 330 (2022) ("[P]arties cannot waive § 2254(d)'s standard of review."); *Amado v.*
19   *Gonzalez*, 758 F.3d 1119, 1133 n.9 (9th Cir. 2014) ("[The court has] the obligation to apply
20   the correct [AEDPA] standard, for the issue is non-waivable.").  If the alleged conduct does
21   not raise a recognized Sixth Amendment violation under the law, the claim is not
22   reviewable on federal habeas.

23   Petitioner also says the R&R erred in concluding that the Sixth Amendment does
24   not attach until a formal charge has been filed because that " 'bright line' rule is not clearly
25   established federal law."  (Doc. 27 at 4).  But the Supreme Court authority accurately cited
26   by the R&R states that:

27   the Sixth Amendment "right to counsel attaches only when formal judicial
     proceedings are initiated against an individual by way of indictment,
28   information, or preliminary hearing." *United States v. Gouveia*, 467 U.S.

180, 185 (1984) (citing *Kirby v. Illinois*, 406 U.S. 682 (1972)); *see also Fellers v. United States*, 540 U.S. 519, 124 S.Ct. 1019, 1022, 157 L.Ed.2d 1016 (2004) ("The Sixth Amendment right to counsel is triggered at or after the time that judicial proceedings have been initiated . . . whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.") (citations and internal quotation marks omitted).

(Doc. 23 at 13).  Applying that law, Judge Willett noted that the alleged intrusion into the attorney-client privilege occurred on April 15, 2022.  She then concluded that because the criminal complaint against Petitioner was filed two days later, and an indictment issued eight days after that, his Sixth Amendment right had not yet attached at the time of the allege violation and the state court's rejection of the claim was not contrary or an unreasonable application of federal law.  (Doc. 23 at 15–16).  Petitioner does not take issue with this timeline.  He instead argues that Justice Stevens's concurrence in *Gouveia* notes the problems with applying a bright-line attachment rule and says several lower courts "have recognized that the Sixth Amendment can attach prior to indictment" or taken different approaches to when the right attaches.   (Doc. 27 at 4 (citing *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877 (3d Cir. 1999) (en banc) and *United States v. Larkin*, 978 F.2d 964, 969 (7th Cir. 1992)).   Petitioner thus argues there is "no clearly established rule of the Supreme Court denying Sixth Amendment rights prior to formal charge." (Doc. 27 at 5).

Petitioner's objections are unavailing.  "A legal principle is 'clearly established' within the meaning of [§ 2254(d)(1)] only when it is embodied in a holding of [the Supreme] Court."  *Thaler v. Haynes*, 559 U.S. 43, 47 (2010).  Even assuming *arguendo* that *Gouveia* does not state a "bright line" rule, a federal court on habeas review is asked to assess whether Supreme Court precedent *precludes* the state court from holding how it did, not whether Supreme Court precedent could possibly permit a petitioner to make a claim.  *See* 28 U.S.C. § 2254(d)(1); *Lucio v. Lumpkin*, 987 F.3d 451, 484 (5th Cir. 2021) (noting that "[t]he absence of precedent commands the denial of relief to a state prisoner, not the grant of it").  Moreover, a state court decision may not be overturned on habeas review because of a conflict with federal circuit precedent.  28 U.S.C. § 2254(d)(1); *Renico*

1    *v.* Lett, 559 U.S. 766 (2010) (finding court erred when it relied on circuit court precedent

2    for what constituted "clearly established" law); *Ortiz-Sandoval v. Clarke*, 323 F.3d 1165,

3    1172 (9th Cir. 2003).  And "concurring and dissenting opinion of individual Justices" do

4    not qualify as 'clearly established' law.  *Jackson v. Coalter*, 337 F.3d 74, 84 (1st Cir. 2003;

5    *Ross v. Petro*, 515 F.3d 653, 662 (6th Cir. 2008), cert. denied, 129 S. Ct. 906 (2009)

6    (language in plurality Supreme Court opinion not a holding reflecting "clearly established

7    federal law").  Instead, the AEDPA "requires federal habeas courts to deny relief that is

8    contingent upon a rule of law not clearly established by United States Supreme Court

9    precedent at the time the state court conviction became final."  *Williams v. Taylor*, 529

10   U.S. 362, 380 (2000).  Petitioner's cited authorities do not articulate clearly established

11   Supreme Court precedent showing that he had a Sixth Amendment right to counsel at the

12   time of the alleged attorney-client privilege violation, which was during his arrest.  In

13   contrast, the Supreme Court authorities referenced in the R&R, applied to the facts of this

14   case, show that he did not.  So, the Magistrate Judge did not err in finding that no Sixth

15   Amendment right had attached under these facts.

16                    **b.        Fifth and Fourteenth Amendment Violation**

17          Judge Willett also found that Ground 1(a) did not plead a cognizable Fifth or

18   Fourteenth Amendment Due Process claim.  (Doc. 23 at 17).  She found that the Amended

19   Petition did not sufficiently develop facts for a Fifth Amendment claim, and to the extent

20   it was exhausted, such a claim is not cognizable because the Fourteenth Amendment, not

21   the Fifth Amendment, protects a person against deprivations of due process by a state.  (*Id.*

22   at 18).  The R&R further recommends that should the Court find Ground 1(a) states a fully

23   exhausted Fourteenth Amendment due process right violation, no habeas relief is warranted

24   because there is not clearly established law authorizing the invalidation of a conviction for

25   "outrageous governmental conduct."  (Doc. 23 at 18, 20 citing *Stamps v. Miller*, 763 F.

26   App'x 686, 695 (10th Cir. 2019) (noting "the Supreme Court has never applied the Due

27   Process Clause to invalidate a conviction for outrageous governmental conduct")).

28          Petitioner disagrees and points to Ninth Circuit cases, e.g., *Williams v. Woodford*,

1    306 F.3d 665 (9th Cir. 2002) and *United States v. Danielson*, 325 F.3d 1054 (9th Cir. 2003)
2    as support for his claim.  But again, these circuit cases do not constitute "clearly established
3    law" from  Supreme Court precedent to form the basis of a federal habeas claim.  The Court
4    also agrees with the R&R that Petitioner did not sufficiently develop facts for a Fifth
5    Amendment claim and that such a claim is not cognizable.  These objections are overruled.

6    **2.      Ground 1(b): Claim that Detective Siewert Provided Perjurious**
         **Testimony to the Grand Jury**

7    In Ground 1(b) Petitioner claims that the state court violated his due process rights
8    when it presented Detective Siewert's perjured testimony to the grand jury.  The R&R
9    found the claim was not cognizable on federal habeas review and thus the state courts did
10   not err in denying it.  The R&R explains that *Napue v. Illinois*, 360 U.S. 264 (1959) does
11   not explicitly extend to grand jury proceedings and that any error during those proceedings
12   was cured by the petit jury's guilty verdict.  (Doc. 23 at 25).

13   Petitioner first says the R&R applies *Napue* too narrowly.  He says "*Napue* deals
14   with sworn testimony in a criminal proceeding — it does not specifically state that it only
15   applies to *certain* proceedings to the exclusion of others." (Doc. 27 at 7).  Petitioner further
16   says this court is authorized to grant habeas relief "based on the application of a governing
17   legal principle to a set of facts different from those of the case in which the principle was
18   announced."  (*Id.* citing *Lockyer*, 538 U.S. at 76).  Again, Petitioner's objection misses the
19   mark.  The R&R correctly found that the state courts' rejection of this claim was not
20   "contrary to" or "an unreasonable application of" Supreme Court precedent.  (Doc. 23 at
21   25).  As the R&R explained, due process claims about grand jury proceedings are not
22   cognizable in a section 2254 action because there is "no due process right to a grand jury
23   indictment **before** criminal prosecution in state court." *Peterson v. California*, 604 F.3d
24   1166, 1170 (9th Cir. 2010), citing *Hurtado v. California*, 110 U.S. 516, 538 (1884); *Gautt
25   v. Lewis*, 489 F.3d 993, 1003 n.10 (9th Cir. 2007) (emphasis added). Although the Due
26   Process Clause guarantees defendants a fair trial, "it does not require the States to observe
27   the Fifth Amendment's provision for presentment or indictment by a grand jury."
28   *Alexander v. Louisiana*, 405 U.S. 625, 633 (1972). Therefore, a Fifth Amendment

challenge to a grand jury proceeding does not raise a question of federal law and is not cognizable on habeas review. *See* 28 U.S.C. § 2254(d); *Stumpf*, 78 F. App'x at 21 ("First, the introduction of grand jury testimony that was later determined to be perjury did not violate Stumpf's right to due process. Because the right to a grand jury has not been applied to the states via the Fourteenth Amendment, Stumpf's Fifth Amendment challenge to the grand jury proceedings does not raise a question of federal law and is not cognizable on habeas review." (citation omitted)).

Petitioner also says the subsequent jury conviction "cannot inoculate the State from its complicity" because "perjured testimony of a state agent strikes at the very heart of what our society would consider unfair." (Doc. 27 at 8). Generally, a trial jury's guilty verdict renders any error in the presentation of the case to the grand jury harmless. *See Williams v. Stewart*, 441 F.3d 1030, 1042 (9th Cir. 2006) ("[A]ny constitutional error in the grand jury proceedings is harmless because [the petitioner] was ultimately convicted of the offenses charged."). *See also United States v. Mechanik*, 475 U.S. 66, 70 (1986) (holding that, where a defendant was convicted at trial, "any error in the grand jury proceeding connected with the charging decision was harmless" because a subsequent guilty verdict by a petit jury "means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt"); *United States v. Navarro*, 608 F.3d 529, 539 (9th Cir. 2010). The only time the Supreme Court has found structural error in grand jury proceedings is when grand jurors were excluded on the basis of race or gender. *See Vasquez v. Hillery*, 474 U.S. 254, 262 (1986); *Ballard v. United States*, 329 U.S. 187 (1946). Those circumstances do not exist here and the harmless error standard applies. Even assuming his claim was cognizable, any error was rendered harmless by the trial jury's guilty verdict. Petitioner's objections are overruled.

### 3.      Ground 1(c): Inadequacy of State Court's Suppression Remedy

Ground 1(c) contends that the "state court's suppression remedy was inadequate to protect [Petitioner's] constitutional right to counsel and to a fair trial, and the Arizona Court

of Appeals misapplied Fourth Amendment exclusionary rule exceptions in finding not all of the tainted evidence required suppression." (Doc. 4 at 38) (original text bolded and underlined).   The R&R correctly found that any Fourth Amendment claim here was incognizable on habeas review, *see Stone v. Powell*, 428 U.S. 465 (1976), and because Petitioner's Sixth Amendment right to counsel had not yet attached when the alleged violation occurred (as discussed above), there was no Sixth Amendment violation. Petitioner's objections, which again argue that his Fifth and Sixth Amendment right to counsel existed at the time of his arrest, are overruled for the reasons discussed above.

**B.    Ground 2: Admissibility of Detective Siewert's Testimony About the Crash Data Retrieval ("CDR") Report Obtained from the Airbag Control Module ("ACM")**

In Ground 2, Petitioner alleges that the admission of ACM/CDR evidence through Detective Siewert's testimony violated his rights to due process (Ground 2(a)) and his right to cross-examine under the Confrontation Clause (Ground 2(b)).   The R&R concluded that Ground 2(a) was not cognizable on habeas review because there was no Supreme Court precedent "that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." (Doc. 23 at 32 citing *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009)).   The R&R further concluded that the Arizona Court of Appeals decision rejecting Petitioner's Confrontation Clause claim was not contrary to, or an unreasonable application of clearly established federal law because the Supreme Court has never addressed the specific issue of whether CDR report data is "testimonial" such that it implicates Confrontation Clause protections.   (Doc. 23 at 34).

**1.    Ground 2(a): Due Process Violation**

For his due process claim, Petitioner says Supreme Court precedent is clear that "a state court's erroneous application of evidentiary rules can raise a federal question if the error 'so infected the entire trial that the resulting conviction violates due process.' " (Doc. 27 at 9 quoting *Estell v. McGuire*, 502 U.S. 62, 72 (1991)).   Petitioner says the R&R erred in finding there was not a cognizable claim because admitting the ACM/CDR evidence through Detective Siewert's testimony infected his entire trial.

But "[u]nder AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as laid out by the Supreme Court. 28 U.S.C. § 2254(d)." *Holley*, 568 F.3d at 1101. *Holley* specifically noted the scarcity of Supreme Court rulings regarding the admission of evidence as a violation of due process and held that "[a]bsent such 'clearly established Federal law, we cannot conclude that the state court's ruling was an 'unreasonable application.' " *Id*. Petitioner has not directed the Court to "clearly established Federal Law" from which the Arizona Appeals Court went afoul. His objection with regard to Ground 2(a) is therefore overruled.

### 2.    Ground 2(b): Confrontation Clause Violation

For his Confrontation Clause challenge, Petitioner says the R&R erred (1) in deferring to the state court's factual determinations regarding the CDR report and (2) by erroneously conflating Section 2254(d)(1)'s "contrary to" and "unreasonable application of" clauses.

Petitioner first says the state court's factual determination that the CDR report was a "computer-generated compilation of objective data, including the Corvette's speed, braking, throttle percentage, and air bag deployment status" was "objectively unreasonable." (Doc. 27 at 11). He says its admission was erroneously based on the misapprehension that the report was "a reliable compilation of raw data, even though it is not intended to serve as a reliable source for accident-related information because it is designed to deploy airbags and only *secondarily* records other information." (*Id.*)

The Court disagrees that the state court's findings related to the CDR report was based on an unreasonable determination of the facts under Section 2254(d)(2). Under § 2254(d)(2), a federal court is relieved of AEDPA deference when a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A state court renders an unreasonable determination of the facts if it "plainly misapprehends or misstates the record in making its findings or where the state court has

1    before it, yet apparently ignores, evidence that supports petitioner's claim." *Andrew v.*

2    *Davis*, 944 F.3d 1092, 1107 (9th Cir. 2019) (internal quotations omitted). Petitioner has the

3    burden to rebut the state court's factual findings "by clear and convincing evidence." *Burt*

4    *v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(e)(1)).    Indeed, section

5    2254(d)(2) imposes a "highly deferential standard" that "demands that state-court decisions

6    be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting

7    *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "The question under AEDPA

8    is not whether a federal court believes the state court's [factual] determination was

9    incorrect but whether that determination was unreasonable—a substantially higher

10    threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). *Accord Wood v. Allen*, 558

11    U.S. 290, 301 (2010) ("[A] state-court factual determination is not unreasonable merely

12    because the federal habeas court would have reached a different conclusion in the first

13    instance.").

14    Petitioner has not met these standards.    The appeals court explained that the CDR

15    report was never admitted for the purpose of establishing the speed Petitioner was driving

16    at the time of the accident.    Instead:

17        Siewert used the CDR report to "check" his own conclusion that the Corvette
18        was travelling 122 to 124 miles per hour when it collided with the Corsica.
         The court did not admit the CDR report itself; instead only Siewert's
19        independent expert testimony was admitted.    Siewert's testimony about the
         CDR report were therefore not admitted to prove Clary's speed was 142 miles
20        per hour.    Accordingly, the evidence was not hearsay.

21    (Doc. 413 at 173–74).    The state court further noted that Petitioner's counsel spent over

22    three days cross-examining Detective Siewert extensively, during which time he testified

23    that he had done his own evaluation of the accident and only used the report as an aid.    (*Id.*

24    at 174).    Under these facts, Petitioner has not shown the state court's factual determination

25    characterizing the CDR report as a compilation of objective data was "objectively

26    unreasonable."    The objection is overruled.

27    Petitioner next argues that the R&R erred in conflating the "contrary to" and

28    "unreasonable application" clauses of § 2254(d)(1) to conclude that "the admission of the

testimonial ACM/CDR evidence was not contrary to any clearly established Supreme Court precedent." Petitioner says the seminal cases cited in the R&R—*Crawford* and *Bullcoming*—did not address computer-generated data. (Doc. 27 at 11). Petitioner argues that the R&R thus "fails to apply" these authorities "defining testimonial evidence to the ACM/CDR report—which was unquestionably generated to prosecute [Petitioner], and which was created solely for an evidentiary purpose in aid of the police's investigation— on the grounds that no Supreme Court case has applied this clearly established governing rule to this type of testimonial evidence." (*Id.* at 12). The Court finds no err in the analysis. The state court's factual finding that the CDR report was not testimonial evidence meant that its introduction through Detective Siewert's testimony did not implicate the Confrontation Clause under *Crawford* and *Bullcoming*. *See Smith v. Arizona*, 602 U.S. 779, 784 (2024) (noting that the Confrontation Clause "applies ***only*** to testimonial hearsay") (emphasis added); s*ee also Ohio v. Clark*, 576 U.S. 237, 243 (2015) (noting that "a statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial"). As explained above, this factual finding was not "objectively unreasonable," and in light of the absence of Supreme Court precedent saying otherwise, the claim is not cognizable on habeas review. The R&R properly concluded that Petitioner's Confrontation Clause claim was not cognizable in the absence of Supreme Court precedent that admission of non-testimonial computer-generated data violates the Confrontation Clause.

## C.    Ground 3(a): Confrontation Clause Challenge to Hearsay Ruling Re: Prior Testimony of Deborah Higuera

In Ground 3(a), Petitioner contends that the trial court violated his confrontation rights when it sustained the State's hearsay objection during trial counsel's cross-examination of State's witness Deborah Higuera. (Doc. 23 at 36). In a pre-trial deposition, Ms. Higuera testified that when Petitioner's car passed her car on the highway, "it had to have been 10 miles faster than us at least or more." (Doc. 4-13 at 372). At trial, Ms. Higuera testified that Petitioner's car was going "really fast," "way faster than us," and denied having ever previously seen a car go that fast on the freeway. Petitioner's counsel aimed to impeach Ms. Higuera with her prior deposition testimony. The trial judge,

1    however, found that Ms. Higuera's trial testimony was not inconsistent with her prior

2    statements since her deposition testimony was that the car was going 10 miles an hour "or

3    more" faster than theirs. (Doc. 16-1 at 674–75). The court thus precluded Petitioner from

4    introducing the prior statement as impeachment evidence.

5        The appellate court rejected the Petitioner's claim that exclusion of this statement

6    was a violation of his right to a full and fair cross-examination, right to confront a witness,

7    and right to present a complete defense. (Doc. 4-13 at 185). The court agreed with the trial

8    court that Ms. Higuera's prior statement about the relative speed of Petitioner's car was not

9    inconsistent with her trial testimony, and therefore her prior statement was inadmissible

10   hearsay. (*Id.*) The court found that as properly excludable hearsay, the trial court's ruling

11   did not violate Petitioner's right to full and fair cross-examination, his right to confront

12   witnesses, or his right to present a complete defense. (*Id.*)

13       The R&R finds that the Arizona court reasonably concluded that Higuera's prior

14   statement was not inconsistent with her trial testimony, and as a result, there was no clearly

15   established Supreme Court precedent that supported his Ground 3(a) Confrontation Clause

16   challenge. (Doc. 23 at 40–42). Petitioner argues this is in error because the state court's

17   conclusion that Higuera's deposition and trial statements were not inconsistent was based

18   on an unreasonable determination of the facts. (Doc. 27 at 13–14). Petitioner supports this

19   argument with its subjective disagreement with the state court's characterization of Ms.

20   Higuera's testimony. The Court finds that Petitioner has failed to demonstrate how his

21   disagreement with the state court's finding meets his burden under section 2254(d)(2). As

22   long as " '[r]easonable minds reviewing the record might disagree' about the finding in

23   question," AEDPA prevents federal habeas relief. *Brumfield v. Cain*, 576 U.S. 305 (2015)

24   (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)); *Burt v. Tilow*, 571 U.S. 12, 18 (2013)

25   ("[A] state-court factual determination is not unreasonable merely because the federal

26   habeas court would have reached a different conclusion in the first instance").

27       Because this objection is overruled, Petitioner's argument that the state court's

28   limitation on his cross-examination was contrary to or an unreasonable application of

Supreme Court authority is also rejected.  Indeed, under the AEDPA, even if the exclusion of Ms. Higuera's prior testimony was so "clearly erroneous" that it rendered the trial "fundamentally unfair," a court sitting in habeas review "may not permit the grant of federal habeas corpus relief" if such an admission is "not forbidden by 'clearly established Federal law.' " *Holley*, 568 F.3d at 1101 (quoting § 2254(d)(1)). "Simple errors of state law do not warrant federal habeas relief." *Id*.  Petitioner has not pointed to the specific Supreme Court precedent supporting his claim that exclusion of impeachment evidence violates the Confrontation Clause. *Estelle*, 502 U.S. at 67. *See also e.g.*, *Zapien v. Martel*, 849 F.3d 787, 794 (9th Cir. 2015) (holding that "[b]ecause there is no Supreme Court case establishing the fundamental unfairness of admitting multiple hearsay testimony," claim was barred on federal habeas review).  Petitioner's objections to Ground 3(a) are overruled.

### D.    Grounds 3(b)–(d) and Ground 4: Ineffective Assistance of Counsel Claims

The R&R correctly states the law for ineffective assistance of counsel claims on habeas review.  Neither party objects to that accounting and the Court adopts it here. Generally, under *Strickland v. Washington*, 466 U.S. 668 (1984), to establish that trial counsel's "deficient performance prejudiced the defense," a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*., at 687, 694.  Viewed through the deferential lens of § 2254(d) on habeas, a review of *Strickland* claims resolved by the state court is "doubly deferential." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011).

#### 1.    Ground 3(b): State Court's Application of *Strickland* Prejudice Standard to Failure to Impeach Ms. Martinez

In Ground 3(b), Petitioner contends that trial counsel's cross-examination of Ms. Martinez, a State witness, was constitutionally ineffective.  The PCR court found that counsel's performance was deficient, but that Petitioner had not established prejudice.  In his Amended Petition, Petitioner contends that AEDPA deference should not be afforded to the state court decision because the PCR court incorrectly imposed a preponderance of the evidence standard in reviewing this claim rather than the correct prejudice standard

1    under *Strickland*.  (Doc. 4 at 49).  Petitioner says the "Conclusion" section at the end of the

2    state court decision clearly and erroneously states that Petitioner "did not meet his burden

3    of proving the allegations in the petition or supplemental petition by a preponderance of

4    the evidence."  (*Id*. at 51 citing Doc. 4-14 at 101).

5          The R&R disagreed that AEDPA deference was unwarranted and found that "the

6    state courts' decisions denying Petitioner's PCR claims can be reasonably construed as

7    reflecting that the state courts applied the correct standard in evaluating the prejudice prong

8    of *Strickland* when adjudicating Petitioner's ineffective assistance of counsel claims."

9    (Doc. 23 at 51).  It specifically noted that though the incorrect preponderance of the

10   evidence standard was recited in the decision's conclusion, the state court recited the

11   correct *Strickland* prejudice standard at the beginning of its analysis of the claim and

12   correctly applied the standard by finding that the existence of overwhelming evidence of

13   guilt may be considered in analyzing prejudice under *Strickland*.  (*Id*. at 49–52).  The R&R

14   stated that the test on review was not whether the state court ruling was well-reasoned, but

15   whether it was "objectively unreasonable."  (*Id*. at 51).

16         Petitioner's objection as to this conclusion reiterates his argument that "the trial

17   court abandoned the *Strickland* standard in its application to [Petitioner's] case and applied

18   a preponderance of the evidence standard instead."  (Doc. 27 at 15).  He compares the

19   R&R's analysis to a "strikingly similar [] analysis which was rejected by the Supreme

20   Court in *Sears v. Upton*, 561 U.S. 945 (2010)." (Doc. 27 at 16).  The Court disagrees.  In

21   *Sears*, the Court found that the state court erred in its application of the *Strickland* prejudice

22   prong when the state court held that it could not find prejudice because it could not

23   speculate what effect additional mitigation evidence could have had on the proceeding.

24   561 U.S. at 946.  Unlike *Sears*, the state court here correctly applied the reasonable

25   probability standard in assessing the prejudicial effect of trial counsel's failure to impeach

26   Ms. Martinez by specifically identifying and citing to the "overwhelming evidence" of

27   Petitioner's guilt. (Doc. 4-14 at 89 ("Such evidence includes, among other things, multiple

28   eyewitness accounts of the Corvette's extreme speed and aggressive driving, Defendant

fleeing the scene, and Defendant's attempts to avoid apprehension by hiding for approximately two to three hours, lying to the apprehending police officer about living in the area, and attempting to hide his driver's license from that officer. . . the impact of [successfully impeaching Martinez] in light of all of the other evidence would have been minimal at best."); *Hernandez v. Chappell*, 923 F.3d 544, 577 (9th Cir. 2019) (finding no reasonable possibility of a different outcome "[g]iven the weakness of the omitted experts' evaluation when compared to the overwhelming evidence presented to the jury"). Indeed, immediately following the PCR court analysis, the state court concluded: "Defendant has failed to demonstrate a reasonable probability that the result of the proceeding would have been different but for counsel's error." (Doc. 4-14 at 89). The state court did not err in its application of the *Strickland* prejudice standard to this claim.[1] The objection is overruled.

### 2.    Ground 3(c): Trial Counsel's Performance Related to his Cross-Examination of Ms. Higuera

In Ground 3(c) Petitioner claims counsel provided ineffective assistance of counsel when it "bungled Higuera's cross-examination." (Doc. 4 at 45). The state court found that counsel was not constitutionally ineffective on his cross-examination of Ms. Higuera, noting that after the trial court found that her prior testimony was consistent with her trial testimony and thus inadmissible hearsay, "[c]ounsel had no ability to do more with Higuera." (Doc. 4-14 at 88). The R&R found that Petitioner failed to show that state court's rejection of the claim was contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts. (Doc. 23 at 55). Petitioner's objection says the state court's determination "that Higuera's previous deposition testimony (where she estimated the speed of Mark's car) and her trial testimony (where she said she did not know the speed) were not inconsistent [and] [t]hat determination was objectively unreasonable." (Doc. 27 at 16). The Court has already concluded that this finding was not objectively unreasonable. *See supra* Section IV.C.

---

[1] Petitioner says the state court's erroneously stated standard in the conclusion justifies relief under portions of Ground 4 as well. (Doc. 27 at 17–18). The Court overrules these objections for the same reasons stated here.

1
2
3
Accordingly, the state court's finding that counsel's cross-examination was not deficit was not contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts. Petitioner's objection is overruled.

### 3. Ground 3(d): Trial Counsel's Performance Regarding Opening Statement Promise

In Ground 3(d) Petitioner argues that when his trial counsel failed to elicit testimony from Martinez and Higuera that "the Corvette passed them at approximately 10 miles per hour faster than they were traveling or more," as promised in his opening statement, he "substantially damaged the very defense he primarily relied on." (Doc. 4 at 53–54). The state court found that trial counsel's performance was not deficient under *Strickland* as to this issue. It reasoned:

> As the State called these witnesses, counsel could not have controlled the answers given other than to object. The Court does not find that an objection would have been effective. Counsel did attempt to impeach Higuera but the applicable testimony was found to be consistent with prior statements and therefore hearsay. Counsel had no ability to do more with Higuera. Re-calling Higuera to elicit hearsay would have led to an unsuccessful result. The Court finds counsel not deficient as to this issue raised and as there is no deficiency, there is no prejudice.

(Doc. 4-14 at 88). The R&R found that Petitioner had not established why the state court ruling was not due AEDPA deference. Noting that this was "not a case in which trial counsel broke a promise to the jury that a certain defense witness was going to be called," the R&R found that Petitioner had failed to identify any clearly established Supreme Court precedent supporting the claim that a promise and failure to elicit testimony amounted to ineffective assistance of counsel. It concluded that Petitioner had failed to meet his burden of showing that the state court's rejection was not contrary to or an unreasonable application of *Strickland*, or that it was based on an unreasonable determination of the facts. (Doc. 23 at 56–57).

In his Objection, Petitioner says "[c]lear precedent from the Ninth Circuit holds that 'a counsel's broken promise' to produce a particular witness or particular testimony may result in prejudice to the defendant." (Doc. 27 at 17 citing *Saesee v. McDonald*, 725 F.3d

- 18 -

1045, 1050 (9th Cir. 2013)).  It says the R&R erred in deferring to the state court ruling by failing "to cite any rule limiting the Ninth Circuit's case law finding that broken promises by counsel can be ineffective assistance only if the promises were of a certain nature." (Doc. 27 at 17).

But the Court disagrees with Petitioner's reading of *Saesee* or his understanding of how the R&R cited that case.  In *Saesee*, the Ninth Circuit reviewed the state court's rejection of petitioner's ineffective assistance claim that his counsel failed to produce a witness promised in his opening statement.  In doing so, the Ninth Circuit expressly stated that although the state court was "free to assign prejudice to the broken promise . . . no clearly established federal law required the [state court] to presume prejudice for a broken promise or to assign the alleged broken promise any particular prejudicial weight." *Saesee*, 725 F.3d at 1050.  It thus held that the state court's conclusion that no promise was made to produce a witness was not an unreasonable application of *Strickland*.  *Id*.  Thus, contrary to Petitioner's contention, *Saesee* is not Ninth Circuit precedent interpreting *Strickland* (the clearly establish Supreme Court precedent that that the state court applied) that the state court erred in failing to apply.   Though *Saesee* may support the proposition that the state court *could* have reasonably determined that a promise was made and undelivered under *Strickland*, it certainly does not stand for the proposition that the state court was required to make such a finding.  Here, as explained in the R&R, the state court reasonably applied *Strickland* and found there was no deficit performance under these facts.   Petitioner's objections as to this claim are overruled.

      **4.**    **Ground 4(a): Trial Counsel's Concession that Evidentiary Rules did not Preclude Witnesses from Testifying that Petitioner's Car was Traveling Fast and PCR Court's Finding of no Deficient Performance**

In Ground 4(a) Petitioner argues that (1) trial counsel was ineffective for conceding that evidentiary rules did not preclude eyewitness from testifying that his vehicle was traveling fast; and (2) that the PCR court's application of state evidentiary rules in finding there was no ineffective assistance of counsel in this regard violated his due process rights.

1    (Doc. 4 at 57–58).  The R&R disagreed.  It noted that an attorney's failure to raise a

2    meritless argument does not constitute ineffective assistance of counsel.  (Doc. 23 at 58).

3    It also found that Petitioner's due process contention was undeveloped beyond Petitioner's

4    bare contention that the PCR court's ruling violated his due process rights.  (Doc. 23 n. 17)

5    ("Irrespective of whether the claim has been exhausted, the assertion is conclusory and

6    without merit.").  (*Id*.)

7         Petitioner says the R&R erred when it did "not contend with the constitutional

8    violations asserted in the Amended Petition – including that errors in the admission of

9    certain types of evidence can result in a violation of due process." (Doc. 27 at 18).  There

10   is no error.  The Court agrees with the R&R that any due process argument related to

11   counsel's evidentiary concession is undeveloped and unsupported. Moreover, as discussed,

12   Petitioner has failed to identify any clearly established Supreme Court precedent that holds

13   that a due process violation arising from a failure to object is a structural error and thus

14   subject to automatic reversal.  *See Neder v. United States*, 527 U.S. 1, 8 (1999) (noting the

15   "very limited class of cases" subject to the structural-error doctrine).  Any due process

16   violation here, at the very least, was harmless.

17         **5.    Ground 4(b): Trial Counsel's Failure to Object to Opinions**
             **Regarding Fault and to Inflammatory Statements**

18
          In Ground 4(b) Petitioner contends that counsel was ineffective for failing to object

19   to opinions regarding fault and to certain witnesses' inflammatory statements.  (Doc. 4 at

20   59–60).  He argues that the PCR court's finding that counsel's performance was deficient

21   in this regard but not prejudicial was contrary to and involved an unreasonable application

22   of federal law.  (*Id*.)  He says the PCR court erroneously adopted "the court of appeals'

23   harmless error/fundamental error standard instead of the 'reasonable probability'

24   standard." (Doc. 4 at 60).  The R&R disagreed and found that "the trial court's decision,

25   as affirmed by the Arizona Court of Appeals, can be reasonably construed as reflecting the

26   state courts applied the correct standard in evaluating the prejudice prong of *Strickland*

27   when adjudicating Petitioner's ineffective assistance of counsel claims."  (Doc. 23 at 60).

28   In his Objection, Petitioner reiterates the arguments from his Amended Petition and Reply

1    without identifying error in the facts or analysis of the R&R.  (Doc. 27 at 18).  Where there

2    is no objection to a magistrate's factual and legal determinations, the district court need not

3    review the decision "under a *de novo* or any other standard."  *Thomas*, 474 U.S. at 150.

4    The Court has nonetheless reviewed the R&R's findings and conclusions as to Ground 4(b)

5    and finds no error.  This objection is overruled.

6              **6.    Ground 4(c): Cumulative Effect of Counsel's Deficiencies**

7              In Ground 4(c), Petitioner argues that he was prejudiced by the cumulative effect of

8    trial counsel's ineffectiveness. (Doc. 4 at 60).  The PCR court denied this claim, holding

9    that Arizona has not recognized the cumulative error doctrine for ineffective assistance of

10   counsel claims and, alternatively, if the claim was cognizable, there was "little error and

11   not such where [Petitioner] was prejudiced." (Doc. 4-14 at 98–99).  The court of appeals

12   found the trial court did not abuse its discretion in denying the claim.  (Doc. 4-13 at 206).

13             The R&R recommends denying the claim because there is no clearly established

14   Supreme Court precedent that requires a habeas court to assess ineffective assistance of

15   counsel claims for cumulative prejudice, and even if there was, the state court's rejection

16   of Ground 4(c) was not objectively unreasonable.  It also recommends denying the claim

17   because Petitioner waived raising Ground 4(c) as a due process claim by failing to

18   sufficiently brief it in his Amended Petition; and because Petitioner's failure to fairly

19   present Ground 4(c) as a due process claim in his PCR petition to the state courts means

20   that aspect of the claim remains unexhausted.  (Doc. 23 at 61–64).

21             Petitioner objects that the R&R "elevates form over function" in differentiating

22   between his right to counsel and his right to due process and "ignores the extensive briefing

23   on this topic in [Petitioner's] Amended Petition and Reply."  (Doc. 27 at 18–19).  He

24   suggests that a cumulative due process claim based on the same facts as the ineffective

25   assistance of counsel claims should be assumed and accordingly assessed on federal habeas

26   review.  (*Id.*)  The Court rejects this notion.  Habeas petitioners must plead their claims

27   with particularity, and notice pleading is not sufficient. *See* Rule 2(c), Rules Governing §

28   2254 Cases; 1976 Advisory Committee's Note on Adoption, Habeas Corpus Rule 4; *Mayle*

*v. Felix*, 545 U.S. 644, 655–56 (2005). Petitioner's reliance on *Strickland* as a due process case is also unpersuasive.  Although *Strickland* notes that the right to counsel advances a defendant's right to due process, it did not hold that the two rights are interchangeable for habeas pleading purposes.  Indeed, as Petitioner asserts several times in his Objection, the two claims are reviewed under different standards, with a right to counsel claim reviewed under a doubly high deference when the claim has been considered on the merits by a state court.  This objection is overruled.  The Court further agrees with Ground 4(b)'s remaining deficiencies, as found in the R&R.

**V.    Conclusion**

Based on the foregoing,

**IT IS ORDERED** that Magistrate Judge's R&R (Doc. 23) is **accepted** and **adopted** as the Order of this Court.

**IT IS FURTHER ORDERED** that the Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 4) is **denied** and **dismissed with prejudice**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal are **denied** because Petitioner has not made a substantial showing of the denial of a constitutional right.

**IT IS FINALLY ORDERED** that the Clerk of Court shall terminate this action and enter judgment accordingly.

Dated this 30th day of March, 2025.

Honorable Diane J. Humetewa
United States District Judge

- 22 -